1

Steve W. Berman (*Pro Hac Vice* Forthcoming)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
T: (206) 623-7292
F: (206) 623-0594

2

3

4

5

Christopher R. Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
T: (213) 330-7150
F: (213) 330-7152

6

7

8

9

[Additional Counsel listed on signature page]

10

*Attorneys for Jane Doe, individually and on
behalf of all others similarly situated*

11

12

## UNITED STATES DISTRICT COURT

13

## CENTRAL DISTRICT OF CALIFORNIA

14

## WESTERN DIVISION

15

16

JANE DOE. individually and on behalf
of all others similarly situated,

No.  2:20-cv-4172

17

Plaintiff,

18

v.

**CLASS ACTION COMPLAINT**

19

20

UNIVERSITY OF SOUTHERN
CALIFORNIA, and THE BOARD OF
TRUSTEES OF THE UNIVERSITY
OF SOUTHERN CALIFORNIA,

**JURY TRIAL DEMANDED**

21

22

Defendants.

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     NATURE OF ACTION.................................................................1

II.    JURISDICTION AND VENUE.................................................2

III.   PARTIES ....................................................................................3

IV.   FACTS ........................................................................................5

      A.    Background ......................................................................5

      B.    The Novel Coronavirus Shutdowns And Defendant's Campus Closure ..............................................................................8

      C.    Defendant's Refusal To Issue Tuition And Fee Refunds ...........15

V.     CLASS ACTION ALLEGATIONS.......................................16

VI.   CAUSES OF ACTION ............................................................19

          COUNT I  BREACH OF CONTRACT......................................19

          COUNT II  UNJUST ENRICHMENT .......................................20

          COUNT III  CONVERSION .........................................................21

          COUNT IV  CAL. BUS. & PROF. CODE § 17200...................22

PRAYER FOR RELIEF .....................................................................23

JURY DEMAND ...................................................................................24

Plaintiff, Jane Doe, individually and on behalf of all others similarly situated, for her Class Action Complaint against Defendants University of Southern California and The Board of Trustees of The University of Southern California (collectively referred to herein as "USC"), based upon personal knowledge as to her own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.    NATURE OF ACTION

1.      This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campus(es), Defendants continue to charge for tuition, fees, and room and board as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendants do so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendants for a comprehensive academic experience, Defendants instead offer Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendants, Plaintiff will work with Defendants to reach an agreeable schedule for their response to this Class Action Complaint.

-1-

facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

3.     While some colleges and universities have promised appropriate and/or proportional refunds, Defendants exclude themselves from such other institutions treating students fairly, equitably, and as required by the law. And for some student and families, Defendants do so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4.     As a result, Defendants' actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of the services paid and did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of

-2-

California, and Defendants are citizens of California. Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than California, where this action is originally being filed, and therefore diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). The total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

6.      Venue is appropriate in this District because Defendants are located within the Western District of California. And on information and belief, events and transactions causing the claims herein, including Defendants' decision-making regarding their refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.     PARTIES

7.      Plaintiff Jane Doe is a citizen and resident of the State of California. Plaintiff is enrolled as a full time student for the Spring 2020 academic term at USC. Plaintiff is in good financial standing at USC, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendants for the Spring 2020 term. Plaintiff paid Defendants for opportunities and services that she will not receive, including on-campus education, facilities, services and activities.

8.      Plaintiff enrolled at USC due to the strength and rigor of its academic program, the opportunities afforded by USC to interact directly with top-notch faculty and peers, and to gain connections through interpersonal experiences created by USC as part of USC's ordinary academic experience, including with USC alumni.

9.      While USC publicly maintains the position that it continues to offer a high-quality education and a robust learning environment, the reality as

reflected by Plaintiff's experience is far different. Instead, the content and quality of her education has significantly decreased from earlier in the semester. Thus, since USC's transition to an online-only environment, Plaintiff has suffered significant losses and detrimental changes in her bargained for academic experience.

10.     While Plaintiff could previously meaningfully interact with her professors directly, whether before and after class, in office hours, or through casual conversations, such opportunities are now constrained to rote emails and pre-scheduled in-and-out Zoom conferences, absent of all relationship connections.

11.     Professors routinely provide conflicting information over email, often emailing the wrong classes the wrong assignments. And where information is communicated over email, it lacks sufficient substance or is communicated by teaching assistants as opposed to the professor.

12.     Whereas professors could previously adapt their material and delivery based on their assessment of student comprehension, with the shift to online only education, such opportunities are all but erased. Instead, professors present sterilized lectures and/or PowerPoint presentations, cutting classes short instead of using the full time that the professors previously used.

13.     On top of these examples, her professors have outright cut out key assignments vital to her educational experience, including assignments that would provide her with important learning opportunities and access to USC's alumni network. Indeed, the inability to access library based resources caused the cancellation of at least one important assignment as that assignment utilized key library-based resources that were unavailable off-line.

14.     Plaintiff has lost the opportunity and ability to interact directly with her peers. While Plaintiff frequently utilized many university resources to

schedule private study rooms to participate in group-study sessions with her peers, with USC's closing of its doors and barring students from campus, such sessions are no longer possible. Online-only group sessions provide no substitute and are often fragmented by time and geographic differences as well as a stark decrease in student interest to participate in such sessions in the first place. Such sessions were also important to Plaintiff's education and comprehension, not to mention the relationship and friendships gained through such interactions.

15.     Plaintiff has also lost all opportunity to utilize other school resources. With USC's shuttering of its campus, Plaintiff could no longer participate in school activities, such as club athletics, USC's Greek system, or the numerous other on-campus social clubs in which she was involved. She cannot utilize the same educational resources ordinarily available to students.

16.     Defendant USC is an institution of higher learning located in Los Angeles County, California.

17.     A private corporation, USC is governed by the Board of Trustees of The University of Southern California ("USC Board of Trustees"), which has approximately 55 voting members. The USC Board of Trustees is a self-perpetuating body, electing one-fifth of its members each year for a five-year term of office.

18.     Defendants provide Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendants charge Plaintiff and the Class Members.

## IV.     FACTS

**A.     Background**

19.     Founded in 1880, USC is the oldest private research university in California. It has a current enrollment of approximately 48,500 students, with

approximately 28,000 graduate students and 20,500 undergraduates across 150 majors and minors.

20.     USC has an endowment of approximately $6 billion.

21.     The Campaign for USC, a multi-year fundraising campaign saw more than 400,000 donors provide $7.16 billion in funds between 2011–2018. The campaign was the second largest fundraising effort in the history of U.S. higher education.[2]

22.     Recently, USC received an estimated $19 million from the Federal Government as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

23.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), USC is not such a school.

24.     Rather, a significant focus of Defendants' efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

25.     A few examples of such efforts to promote that experience follow: USC describes itself as a "top-tier private research institution, with all the resources of a large, urban university and the nurturing environment of a small liberal arts college," where students will "find different perspectives, experience new cultures, and ultimately uncover a few things about [themselves] along the way."

---

[2] https://news.usc.edu/trojan-family/campaign-for-usc-end/.

26.     At USC students join a "dynamic community" and embark on a "journey of intellectual challenges, personal and professional achievement and lifelong friendships with alumni who excel in every field."

27.     Students "[e]njoy access to facilities and technologies that rival those of professional settings," 23 libraries, and an 8:1 student to faculty ratio.

28.     USC's distinguished faculty of 4,000 scholars, researchers, teachers, and mentors includes five Nobel laureates and dozens of recipients of prestigious national honors.

29.     USC offers more than 1,000 student organizations responsible for campus programs such as concerts, lectures, and leadership programs to "develop valuable skills and build community on campus."

30.     USC also promotes the Residential College experience where students can learn together from the comfort of their residence hall.

31.     To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

32.     For the Spring term 2020, USC assesses the following: $28,628.00 for tuition, approximately $3,150.00 for room and board, $64.00 for student programming, $8.00 for the student aid fund, $366.00 for student health, and Tuition Refund Insurance of $119.17, for a total of approximately $32,335.17. Students may also pay other expenses such as parking.

33.     Such charges for study are significantly higher than online-only programs.

34.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for

online undergraduate programs and $1,881 per course for online graduate programs.

**B.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

35.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

36.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

37.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

38.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

39.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

010920-18/1266002 V1

40.     As it relates to this suit, on March 4, 2020 California Governor Gavin Newsom proclaimed a State of Emergency as a result of the threat of COVID-19.[3]

41.     On March 19, 2020, Governor Newsom issued via Executive Order N-33-20, a stay-at-home order to protect the health and well-being of all Californians.[4]

42.     On the same date, Los Angeles Mayor Eric Garcetti issued a Safer At Home Public Order requiring residents to isolate themselves in their residences with exceptions for essential activities.[5] The order was later extended on May 4, 2020 through May 15, 2020.[6]

43.     On or about March 10, 2020, USC began migrating all, or substantially all, classes online.

44.     On March 6, 2020, Charles F. Zukoski, Provost and Senior Vice President for Academic Affairs, sent a memorandum to the USC Community announcing they would test online lectures starting March 11, 2020 through March 13, 2020.[7]

45.     On March 10, 2020, Provost Zukoski sent a memorandum to the USC Community announcing after Spring Recess from March 14–21, 2020, online classes would continue from March 22 through March 29, 2020.[8] Students were encouraged not to return to campus and to "take all necessary items essential to continuing their education, such as laptops, textbooks, and

---

[3] https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.
[4] https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.
[5] https://www.lamayor.org/sites/g/files/wph446/f/page/file/SAFERATHOMEORDER2020.03.19%28REV2020.05.04%29.pdf.
[6] *Id.*
[7] https://coronavirus.usc.edu/2020/03/06/test-of-online-class-system/.
[8] https://coronavirus.usc.edu/2020/03/10/update-to-university-policies-and-plans/.

-9-

010920-18/1266002 V1

study materials."[9] All university-sponsored events, on and off campus, scheduled between March 11 and March 29, 2020 were cancelled or postponed.

46.    On March 11, 2020, Provost Zukoski sent another memorandum extending the period of remote instruction from March 30 to April 14, 2020.[10] Students who were leaving campus for Spring Recess would not be allowed to return until at least April 13, 2020.[11]

47.    On March 13, 2020, President Carol L. Folt sent a message to the Trojan community acknowledging "Spring semester is usually filled with events, programs, thesis presentations, recitals, competitions, and celebrations."[12]

48.    On March 16, 2020, President Folt and Provost Zukoski sent a message informing students the remainder of the academic semester will be online.[13] The message noted they were considering pro-rating refunds for room and board but would not have "a specific plan or answers for a couple of weeks."[14]

49.    On March 20, 2020, President Folt and Provost Zukoski sent a message that students who left university housing during Spring Recess cannot return to campus to retrieve their belongings until sometime in the future.[15]

50.    On March 20, 2020, USC housing sent a message requesting all students with the ability to leave to do so, and students with circumstances requiring them to remain in USC Housing to submit a request for review.[16]

---

[9] *Id.*
[10] https://coronavirus.usc.edu/2020/03/11/notice-of-extended-period-of-remote-instruction/.
[11] *Id.*
[12] https://coronavirus.usc.edu/2020/03/13/message-from-the-usc-president/.
[13] https://coronavirus.usc.edu/2020/03/16/covid-19-new-actions-2/.
[14] *Id.*
[15] https://coronavirus.usc.edu/2020/03/20/latest-updates-and-actions/.
[16] https://coronavirus.usc.edu/2020/03/20/housing-access-during-covid-19/.

010920-18/1266002 V1

51.     On April 10, 2020, David Wright, Senior Vice President of Administration, and Winston B. Crips, Vice President for Student Affairs, announced USC will provide a pro-rated reimbursement of room and meal plan payments to students who vacated university housing.[17]

52.     On April 28, 2020 Provost Zukoski sent a letter to students noting USC has "no plans to provide pro-rated tuition refunds for the Spring 2020 semester or our upcoming Summer sessions."[18]

53.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

54.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including USC, now provide.

55.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[19]

---

[17] https://coronavirus.usc.edu/2020/04/10/4-10-usc-housing-update/.
[18] https://coronavirus.usc.edu/2020/04/28/4-28-academic-updates-for-current-and-future-trojans/.
[19] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

56.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[20]

57.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators,

---

[20] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

-12-

doctors, organizers, and more that congregate on our campus) will no longer be provided."[21]

58.     USC students echo these efforts. Over 7,000 USC students have signed a Change.org petition requesting USC provide refunds to students including tuition and fees, noting the following:

"On March 6, 2020, faced with the ongoing spread of the Coronavirus in Los Angeles and beyond, University of Southern California announced their decision to move all classes to Zoom from March 11 to March 13, which has now been extended to April 14. The fact is all the classes of this semester will end on May 1 and nearly 1/3 of the classes will be transferred online. While we recognize and sympathize with the difficult position that the Coronavirus has put University of Southern California in, this transition to online classes represents a notable reduction in educational and instructional quality, which we fear will negatively affect our educational and professional outcomes moving forward. Further, we fear that the quality of education we will be receiving will not be commensurate with costly tuition payments made in January of this year.

In addition to a reduction in educational quality, other unintended consequences of the Coronavirus, including cancelled talks on campus, networking events, and reduced face-to-face time with professors and colleagues, threaten to negatively affect our short and long-term professional outcomes. This is a particularly worrying prospect for those of us graduating in 2020, as we will likely find ourselves graduating into a recession.

With this in mind, we call upon the University to address the reduction of educational quality that online classes represent, as well as the negative professional impacts of reduced networking opportunities and cancelled campus events, by providing students with a partial tuition reimbursement. Thank you for your reading and sharing."[22]

---

[21] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.
[22] https://www.change.org/p/usc-president-carol-l-folt-partial-tuition-reimbursement-at-university-of-southern-california.

59.    And as reported in The Daily Trojan student newspaper:

"Given the state of the semester, students should be given a partial tuition refund for Spring 2020. While professors and University administration have gone to great lengths to adapt course curriculums to an online format and learn how to navigate Zoom, the caliber of education that students are receiving is evidently not the same.

It seems logical that students would be partially reimbursed for on-campus housing and meal plans going to waste, but the same should hold true for University tuition. USC is a top-ranked learning institution and research facility, and the high cost of tuition is partially caused by the level of experiential learning and on-campus resources students have access to. Much of what tuition money goes toward is no longer accessible, like the University's 23 libraries, laboratories or lighting stages, since the transition to remote learning.

Closed classrooms, abandoned dorms and shuttered dining halls are only a facet of the college experience that students are missing from home. The costly biannual invoice from USC guarantees students smaller class sizes, unique course offerings and a more personalized education than students would receive at a large public university, not to mention an exclusive membership to the Trojan Family.

***

Not everyone has access to the same resources, a quiet space to learn, a stable internet connection or even all of their textbooks. Although the University has made accommodations by changing the grading policy, some students may still be burdened by the loss of resources available at the University.

While students and educators alike are making do with what they have, Zoom office hours will never be the same as interacting face-to-face with a professor, and there's simply no virtual substitute for conducting undergraduate research in a lab on campus. Free events such as Visions and Voices and Speaker Series are postponed or canceled, and for the few events that have been moved online, glitchy audio and technical difficulties will never equate to sitting in Bovard Auditorium and listening to a presentation live.

***

010920-18/1266002 V1

> While the email sent by Zukoski was an attempt at transparency, students should expect more from USC. As unprecedented a situation as this is, USC has a responsibility to its students first. It claims to accomplish its mission of creating well-rounded contributors to society through a combination of 'teaching, research, artistic creation, professional practice and selected forms of public service.' With the suspension of daily life and the introduction of remote instruction, obviously not all of this is possible. But if this is what students are paying for, then Zoom classes shouldn't cost exactly the same as what a semester's worth of hands-on interaction and experience would."[23]

**C.     Defendant's Refusal To Issue Tuition And Fee Refunds**

60.     Given USC's transition to online classes and COVID-19 concerns, Defendants asked students to vacate student housing as soon as possible and not to return after Spring Recess from March 14–21, 2020.

61.     While Defendants have agreed to prorate housing and dining as of March 23, 2020, they have not agreed to do the same with tuition or mandatory fees.[24]

62.     Rather, Defendants announced tuition will remain the same for the Spring 2020 term based on the disputed statement "we are continuing to provide a high-quality education, ensure academic progress towards degree, and offer a robust learning environment."[25]

63.     Defendants do so notwithstanding the fact USC received $19 million in federal stimulus aid under the CARES Act.

---

[23] https://dailytrojan.com/2020/04/15/usc-must-gives-students-a-partial-tuition-refund/.
[24] https://coronavirus.usc.edu/2020/04/10/4-10-usc-housing-update/.
[25] https://coronavirus.usc.edu/2020/04/28/4-28-academic-updates-for-current-and-future-trojans/.

-15-

010920-18/1266002 V1

## V.    CLASS ACTION ALLEGATIONS

64.    Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and a Class defined as follows:

> All persons enrolled at USC for the Spring 2020 term who paid USC, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by USC.

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

65.    The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendants.

66.    Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendants' records, however, given the thousands of students enrolled at USC in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

67.    Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

68.    Consistent with Rule 23(a)(2), Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—USC's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees and/or room and board.

69.    Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.  Whether Defendants engaged in the conduct alleged;

b.  Whether Defendants have a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c.  Whether Defendants breached identical contracts with Plaintiff and the Class Members;

d.  Whether Defendants violated the common law of unjust enrichment;

e.  Whether Defendants converted Plaintiff and the Class Members refunds and/or rights to refunds;

f.  The nature and extent of damages and other remedies to which the conduct of Defendants entitles the Class Members.

010920-18/1266002 V1

70.     The Class Members have been damaged by Defendants through their practice of denying refunds to Class Members.

71.     Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student enrolled at USC in the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave USC's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

72.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members she seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

73.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

74.     In addition, under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The class action

010920-18/1266002 V1

device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

75. Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that USC is located within this judicial district and discovery of relevant evidence will occur within this district.

76. Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI.   CAUSES OF ACTION
### COUNT I
### BREACH OF CONTRACT

77. Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

78. Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

79. Under their contracts with Defendant, Plaintiff and the members of the class paid Defendant tuition, fees and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

80. Plaintiff and the Class Members have fulfilled all expectations, having paid Defendants for all Spring 2020 term financial assessments.

81. However, Defendants have breached such contracts, failed to provide those services and/or have not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendants. Defendants

have moved all classes to online classes, have restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or have evicted Plaintiff and the Class Members from campus housing. In doing so, Defendants have and continue to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendants.

82.    Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendants' breach.

83.    Plaintiff and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

**COUNT II**

**UNJUST ENRICHMENT**

84.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

85.    At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits on Defendants, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

86.    Defendants knowingly accepted the benefits conferred upon them by Plaintiff and the Class Members.

87.    Defendants appreciated or knew of the non-gratuitous benefits conferred upon them by Plaintiff and members of the Class.

88.    Defendants accepted or retained the non-gratuitous benefits conferred upon them by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendants' unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

010920-18/1266002 V1

89.     Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

90.     Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

**COUNT III**

**CONVERSION**

91.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

92.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access USC's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendants tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendants.

93.     Defendants wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus(es) to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendants have unlawfully retained the monies Plaintiff and the Class Members paid Defendants as well as barred Plaintiff from USC's facilities.

94.     Defendants deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendants tuition, fees, and/or room and board.

-21-

95.     Plaintiff and/or Class Members have requested and/or demanded that Defendants issue refunds.

96.     Defendants' interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

**COUNT IV**

**CAL. BUS. & PROF. CODE § 17200**

97.     Plaintiff restates and re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

98.     California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq., prohibits an "unlawful, unfair or fraudulent business act or practice."

99.     Defendants violated the Unfair Competition Law by committing an unlawful act by breaching its contracts with Plaintiff and Class Members, failing to provide services paid for, including in-person instruction and access to Defendants' facilities, and failing to refund tuition, fees, and costs.

100.    Defendants' practices are fraudulent because Defendants represented they would offer in-person instruction and access to Defendants' facilities. Plaintiff and Class Members paid for the Spring 2020 semester and college experience as advertised. But Plaintiff and Class Members did not receive the services they paid for—Defendants moved all classes online, restricted student access to university facilities, and evicted Plaintiff and Class Members from campus housing.

010920-18/1266002 V1

101.   Defendants continue to charge full tuition and fees as if full services and facilities are being provided, collecting millions of dollars from students deprived of the full benefit of their payments.

102.   Defendants' practices are immoral, unethical, oppressive, unscrupulous or substantially injurious because it deprives Plaintiff and Class members of their bargained for educational experience, opportunities, and access to facilities, and forces students and families bear the burden of USC's COVID-19 related shutdown.

103.   As a direct and proximate result of Defendants unlawful and unfair business acts and practices, Plaintiffs have suffered and will continue to suffer actual damages.

104.    Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendants including:

A.    Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

B.    Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.    Actual damages and all such other relief as provided under the law;

D.    Pre-judgment and post-judgment interest on such monetary relief;

010920-18/1266002 V1

1       E.     Other appropriate injunctive relief as permitted by law or equity,

2   including an order enjoining Defendants from retaining refunds for tuition,

3   fees, and/or room and board;

4       F.     The costs of bringing this suit, including reasonable attorney's

5   fees; and

6       All other relief to which Plaintiff and members of the Class may be

7   entitled by law or in equity.

8                                 **JURY DEMAND**

9       Plaintiff demands trial by jury on her own behalf and on behalf of Class

10  Members.

11  Dated: May 7, 2020               Respectfully submitted,

12                                By:  */s/ Christoper R. Pitoun*

14                                Christopher R. Pitoun (SBN 290235)
                                  *christopherp@hbsslaw.com*

15                                HAGENS BERMAN SOBOL SHAPIRO LLP
                                  301 North Lake Avenue, Suite 203
                                  Pasadena, CA 91101

16                                T: (213) 330-7150
                                  F: (213) 330-7152

18                                Steve W. Berman
                                  (*Pro Hac Vice* Forthcoming)

19                                *steve@hbsslaw.com*
                                  HAGENS BERMAN SOBOL SHAPIRO LLP

20                                1301 Second Avenue, Suite 2000
                                  Seattle, WA 98101

21                                T: (206) 623-7292
                                  F: (206) 623-0594

22                                Daniel J. Kurowski
                                  (*Pro Hac Vice* Forthcoming)

23                                *dank@hbsslaw.com*
                                  Whitney K. Siehl

24                                (*Pro Hac Vice* Forthcoming)
                                  *whitneys@hbsslaw.com*

25                                HAGENS BERMAN SOBOL SHAPIRO LLP
                                  455 N. Cityfront Plaza Dr., Suite 2410

26                                Chicago, IL 60611
                                  T: (708) 628-4949

27                                F: (708) 628-4950

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jennifer Duffy
LAW OFFICES OF JENNIFER DUFFY
28649 S. Western Avenue, Suite 6571
Los Angeles, CA  90734
310-714-9779
*jennifer@usclassactions.com*

*Attorneys for Plaintiff, individually and on behalf of all others similarly situated.*

-25-